## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ARRIE DALE GIBSON,**

     **Plaintiff,**

**v.**                                                                 **CASE NO. 8:06-CV-1235-T-EAJ**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

     **Defendant.**

_____ /

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards.  See 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence

---

[1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]  The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (Dkt. 6).

as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  <u>Goodley v. Harris</u>, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[3]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See <u>Jamison v. Bowen</u>, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed his application for DIB on February 16, 2001, claiming an onset of disability beginning April 5, 1998, a date which was amended to December 31, 1998. (T 16)  Plaintiff claims disability due to obesity, depression, anxiety, and degenerative disc disease of the lumbar spine with chronic lower back pain. (T 17)  Plaintiff's application was denied on August 28, 2002, not based on the merits of the claim, but on the claimant's lack of insurance coverage. (T 16)  The Plaintiff sought review of that decision.  On July 18, 2004, the ALJ found that Plaintiff's correct date of last insured was December 31, 1999; therefore, a decision on the issue of disability during the period of December 31, 1998 through December 31, 1999 was required. (T 16, 30A)  A second hearing was held before the ALJ on December 1, 2005. (T 16)  On February 23, 2006, the ALJ found that

---

[3] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  <u>Bonner v. Prichard, Ala.</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

Plaintiff had not engaged in substantial gainful activity from December 31, 1998 through December 31, 1999, but that Plaintiff was not eligible for DIB because he was not disabled at any time through the date of the decision. (T 25)  The Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits (Dkt. 1).  Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff, fifty-two years old at the time of the second administrative hearing, has the equivalent of a high school education and some vocational training in electronics. (T 314-15)  Plaintiff has previous work experience as a television and VCR repair business owner and as a shipping and receiving clerk. (T 315-16)  In the decision denying benefits, the ALJ found that Plaintiff has depression, anxiety, and degenerative disc disease of the lumber spine with chronic lower back pain. (T 20)  The ALJ determined that these impairments are "severe" but concluded that Plaintiff's impairments or combination of impairments do not meet or medically equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4. (Id.)

The ALJ held that Plaintiff was unable to perform his past relevant work during the period at issue, but that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with some limitations. (T 22)  Specifically, the ALJ held that Plaintiff had the RFC to lift and/or carry ten pounds; to stand and/or walk for a total of two hours per eight-hour workday; and to sit (with normal breaks) for a total of six hours per eight-hour workday; in addition, he could occasionally climb, balance, stoop, kneel, crouch or crawl; he was to have the option to alternate at

will between sitting and standing; and he was restricted to simple, routine, repetitive tasks. (Id.)

Relying on the testimony of a vocational expert ("VE") in response to hypothetical questions which incorporated these limitations, the ALJ concluded that Plaintiff could perform work as a hand packager, food and beverage worker, surveillance system monitor, ticket checker, and a semiconductor tester. (T 23)  In reaching the conclusion that Plaintiff had not been under a disability as defined by the Act, the ALJ held that Plaintiff's statements regarding his limitations were not wholly credible. (T 22)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff alleges: (1) the ALJ's conclusion that Plaintiff's treating psychiatrist began his treatment of Plaintiff in 2000 is not based on substantial evidence; and (2) the ALJ did not properly evaluate the opinions of Plaintiff's treating physicians. (Dkt. 10)

**A.** Plaintiff contends that the ALJ incorrectly concluded that Robin Wooten, M.D. ("Dr. Wooten"), a psychiatrist at the Watson Clinic, began treating Plaintiff in 2000, after the date of last insured for disability purposes.  According to Plaintiff, the ALJ reached this conclusion because Dr. Wooten's treatment records prior to 2000 are not in the record.  Plaintiff points to evidence in the record that Dr. Wooten's treatment relationship with Plaintiff started in 1986 and that Dr. Wooten's office archived Plaintiff's treatment records but was unable to retrieve them upon Plaintiff's repeated requests. (Id. at 13; T 144)  To proceed with the disability analysis as if Dr. Wooten's treatment prior to 2000 never occurred is fundamental error, Plaintiff argues, because it is upon this finding that the ALJ's decision to discount Dr. Wooten's opinion is based.  Plaintiff also submits that the

4

ALJ should have recontacted Dr. Wooten in an attempt to obtain the nature of his opinions as to

Plaintiff (Dkt. 10 at 19).

Although the ALJ did not lend controlling weight to Dr. Wooten's notes regarding the

physician's pre-2000 treatment of Plaintiff, Plaintiff's argument that the ALJ refused to consider

them is inaccurate.  The ALJ stated:

> According to a report signed by Dr. Wooten in September 2003, she had initially
> seen the claimant in 1978 for treatment of anxiety.  The claimant was reportedly
> hospitalized twice in 1980, due to suicidal ideation.  He returned to treatment with
> Dr. Wooten in 1986, complaining of anxiety due to chronic lower back pain.  She
> reportedly had seen him on a regular basis sense [sic] that time (As previously
> discussed, the medical evidence of record did not substantiate any care earlier than
> the year 2000).

(T 19)  The ALJ continued:

> Dr. Wooten wrote a note in November 2005, stating that she had treated the claimant
> since 1978 for anxiety and depression, providing medication management and
> therapy.  She stated that the claimant had chronic back pain due to a 1980s work
> injury and that he had been disabled since 1999.  Dr. Wooten stated that, due to
> severe back pain, the claimant had moderate limitations of his ability to perform
> even simple tasks or to interact with co-workers, as well as marked limitations of his
> ability to adapt to change, deal with the pressures of a work environment or interact
> with supervisors (Exhibit B-14F).

(T 20)

The ALJ's statement that the "medical evidence of record did not substantiate any care [by

Dr. Wooten] earlier that the year 2000" is offered as a parenthetical to explain why the ALJ was

referencing a September 2003 note from the physician regarding care he rendered to Plaintiff 25

years earlier rather than the original medical records themselves; the ALJ was correctly stating that

Dr. Wooten's treatment notes in the record start as of February 15, 2000. (T 19)  It is not evidence,

contrary to Plaintiff's contention,  of any conclusion by the ALJ that Plaintiff and Dr. Wooten did

not have a treatment relationship prior to 2000.  In fact, Plaintiff's representative informed the ALJ

of the missing records at the administrative hearing. (T 312-13)

Under the circumstances, the ALJ was under no duty to recontact Dr. Wooten to obtain additional medical evidence regarding Dr. Wooten's conclusion that Plaintiff has been disabled since 1999. The ALJ has a basic duty to develop a full and fair record. Wind v. Barnhart, 133 Fed. App'x 684, 693 (11th Cir. 2005) (citations omitted). In discharging this duty, the ALJ must "probe conscientiously for all relevant information, even where a claimant is represented by counsel." Id., citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is required to recontact a treating physician when the medical source's treatment records are inadequate for the ALJ to make a disability determination, specifically when that source's records contain a conflict or ambiguity, do not contain all of the necessary information, or do not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. See 20 C.F.R. § 404.1512(e); see also SSR 96-5p (noting that the ALJ need only recontact the treating physician for clarification if the evidence does not support a treating doctor's opinion on any issue reserved to the Commissioner or the ALJ cannot ascertain the basis of the opinion for the record).

In this case, the ALJ was not required to recontact Dr. Wooten. First, as will be discussed in the next section, the ALJ properly rejected Dr. Wooten's opinions. Second, recontacting Dr. Wooten was unnecessary in this case: Plaintiff repeatedly contacted the physician's office and it was ultimately determined by the Watson Clinic's custodian of records that Plaintiff's pre-2000 treatment notes could not be retrieved. (T 142-44) Instead, at Plaintiff's request, Dr. Wooten provided a summary of his treatment of Plaintiff prior to 2000, and these statements are included in the record and are specifically referenced by the ALJ. (T 19-20, 210-12, 295)

Additionally, the record contains substantial testimony from Plaintiff regarding his abilities during the relevant time period. Plaintiff testified that he could care for himself, he operated his TV

6

and VCR repair shop on an irregular, part-time basis, he could sit for up to 40 minutes at a time, and he could drive a car. (T 314, 319, 323, 328) He also testified he was able to hunt from his car pursuant to his disabled hunting permit. (T 334)

Thus, Plaintiff fails to show that the ALJ's decision to not recontact Dr. Wooten was in error because the existing record was otherwise adequately developed.

**B.** Plaintiff's second argument is that the ALJ improperly weighed the opinions of Dr. Wooten and Wallace Coyner, M.D. ("Dr. Coyner"), an orthopedic specialist who began treating Plaintiff in 2000 (Dkt. 10 at 15).

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.[4] Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

The ALJ may discount a treating physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (ALJ may discount a treating physician's opinion when that opinion is unsupported by the medical evidence and contradicts the physician's own treatment notes). Further, the weight afforded a physician's conclusory statements regarding a claimant depends upon the extent to which the statements are supported by clinical or laboratory findings and are consistent with other evidence of record. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ

---

[4] A treating physician's opinion will be accorded controlling weight if it is supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

may reject an opinion that is so brief and conclusory that it lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings.  Hudson v. Heckler, 755 F.2d 781, 784 (11th Cir. 1985).

The ALJ considered the medical evidence of record, including Dr. Wooten's notes regarding his pre-2000 treatment of Plaintiff, and did not give them controlling weight.  Specifically, the ALJ assigned little or no weight to a June 2002 note by Dr. Wooten pronouncing Plaintiff "permanently disabled" and the physician's November 2005 opinion that Plaintiff has been disabled since 1999 due to the psychological impact of his chronic lower back pain. (T 21, 286, 295)

After discussing the record medical evidence, the ALJ noted that "there was no analysis, elaboration, or rationale for [Dr. Wooten's June 2002] opinion." (T 21) The ALJ emphasized that Dr. Wooten's progress notes indicate Plaintiff "was being followed for medication management and that he had complained in September 2000 and March 2002 of anxiety attributable to the fact that his business was not doing well." (Id.)

The ALJ had good cause to discount Dr. Wooten's opinions.  First, as highlighted by the ALJ, Dr. Wooten is a psychiatrist; any opinion as to Plaintiff's disability should therefore be based on Plaintiff's psychological symptoms.  See 20 C.F.R. § 404.1527(d) (listing factors to consider when evaluating the weight of medical opinions).  Dr. Wooten's notes are replete with reference to the depression and frustration Plaintiff experienced due to poor business and back pain; however, the physician also documents Plaintiff's statements that he is unable to work because of his back problems, not related psychological ailments. (T 198, 201-03, 215)  For these, Dr. Wooten consistently provided "minimal psychotherapy". (T 192-98) In September 2003, Dr. Wooten assigned Plaintiff a Global Assessment Functioning ("GAF") score of 60, a number inconsistent with a finding of disability due to psychological limitations. (T 289-90)  See AMERICAN

8

PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 1994) ("DSM-IV").  A GAF score reflects the assessor's opinion regarding an individual's ability to function in social, occupational, or school settings and may have little bearing on an individual's disability status.  Id.; see also Wisner v. Astrue, 496 F.Supp.2d 1299, 1304 (N.D. Ala. 2007) (surveying case law and noting that a low GAF score is not determinative in and of itself of disability).    Additionally, as emphasized by the ALJ, Dr. Wooten's treatment records shed little light on Plaintiff's psychiatric condition during the time period at issue. (T 21)

Plaintiff testified that at some point prior to 1999 Dr. Wooten became his primary care physician for worker's compensation purposes. (T 324)  Plaintiff points out that Dr. Wooten wrote him a prescription for a medical bed for his back and referred him to a physical therapist. (Id.)  Dr. Wooten, however, does not mention in his notes summarizing his past treatment that he was Plaintiff's primary care physician; instead, he notes that Plaintiff initially contacted him for a psychiatric evaluation and that Plaintiff has been under his care ever since for "treatment of anxiety and episodes of depression." (T 210, 295)

Moreover, beyond Dr. Wooten's conclusory statements rendered years later, there is no medical evidence of Plaintiff's disability during the time period at issue.  Plaintiff's argument that the ALJ must accept Dr. Wooten's opinions despite inconsistent evidence would place the physician in the position of ultimate responsibility in terms of a disability determination.  This is not the intent of the Act.  See 20 C.F.R. § 404.1527(e) (stating that a physician's opinion that a claimant is disabled does not require the Commissioner to reach a similar conclusion).  Additionally, as previously stated, Plaintiff testified to a level of functioning during the relevant time period inconsistent with a finding of total disability.  Thus, Plaintiff has not demonstrated any error in the ALJ's consideration of these medical source opinions.

Plaintiff also argues that the ALJ improperly rejected Dr. Coyner's August 2002 report summarizing his review of Plaintiff's medical records and recommending surgery (Dkt. 10 at 23).[5] As Dr. Coyner was the only physician who ordered an MRI, Plaintiff contends, "he had more information about [Plaintiff's] back problems than any other doctor on this record." (Id.)

After discussing the record medical evidence, the ALJ rejected Dr. Coyner's August 2002 note that Plaintiff had severe back pain that might require surgery. (T 21)  The ALJ stated:

> Dr. Coyner stopped short of stating any opinion regarding the issue of disability or of the claimant's specific residual functional capacity.  Moreover, he was vague as to how long the described problems existed, most likely because he never saw the claimant as the patient any earlier than 2001.

(Id.)  The ALJ also noted that Plaintiff began treatment with Dr. Coyner in January 2000, when Plaintiff complained of left foot pain.  At that point, Dr. Coyner recommended conservative care. (T 208)

In accordance with her duty to weigh the evidence, the ALJ considered and properly rejected Dr. Coyner's opinion as one of Plaintiff's treating physicians.  The ALJ pointed to several aspects of Dr. Coyner's opinion which demonstrated good cause for rejecting that opinion.  For instance, Dr. Coyner did not begin treating Plaintiff until January 2000, and only began treating him for back pain (one of the alleged bases for his disability) in February 2001. (T 21, 208) Over a year later, in June 2002, Dr. Coyner ordered an MRI scan on Plaintiff's lower back. (T 209) At that time, Dr. Coyner identified degenerative disc and facet disease between the fifth lumbar vertebra and the sacrum. (Id.)  However, Dr. Coyner did not offer a firm opinion as to how long this condition had persisted, a fact the ALJ highlighted. (T 21, 204-09)  Without such opinion as a foundation, Dr.

---

[5]  Plaintiff summarily asserts that the ALJ should have recontacted Dr. Coyner (Dkt. 10 at 24).  The undersigned will not analyze at length Plaintiff's conclusory statement on this point other than to note that Dr. Coyner did not treat Plaintiff during the relevant time period.

10

Coyner's conclusions regarding Plaintiff's impairments are somewhat conclusory.  The ALJ also emphasized that David Haddock, M.D. ("Dr. Haddock"), who treated Plaintiff for lower back pain in July 1997, opined that Plaintiff had "'long ago' reached maximum medical improvement and that he was capable of returning to his usual occupation." (T 18, 168) For these reasons, substantial evidence supports the ALJ's decision to discount Dr. Coyner's opinion; Plaintiff has failed to show that the ALJ's consideration of Dr. Coyner's opinion was error.

### III.

In this case, Plaintiff had the burden of establishing disability between the alleged onset of disability of December 31, 1998 and the date last insured of December 31, 1999.  Given this narrow window, and the record before the ALJ, the ALJ's decision is supported by substantial evidence and the proper legal principles.  To hold otherwise would be to reweigh the evidence, a task not permitted on judicial review as long as there is substantial evidence to support the administrative decision.  Goodley, 608 F.2d at 236.  The decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits payments is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1)     the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 27th day of September, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge